LEONARD v. TORRANCE et al. (No. 1494.)

(Court of Civil Appeals of Texas. Amarillo. March 12, 1919.)

1. TRIAL ⬥404(2)—FINDINGS—CONCLUSIONS OF LAW OR FACT.

Conclusions, in court's findings of fact, that cancellation of plaintiff's agency was not done in bad faith, that one of defendants was the procuring cause of the sale, and that plaintiff was not the procuring cause, are conclusions of fact, not law.

2. APPEAL AND ERROR ⬥1071(1)—INTERMINGLING CONCLUSIONS OF LAW AND FACT—REVERSIBLE ERROR.

That conclusions of law and fact are to some extent intermingled in court's findings of facts does not necessitate reversal of the case.

3. TRIAL ⬥395(5)—FINDINGS OF FACT—SUFFICIENCY.

In suit by plaintiff broker for commission in which defendants alleged that agency had been canceled in good faith, and that one of defendants, and not plaintiff, was the procuring cause of the sale, held that court's findings of fact were sufficient to comply with Rev. St. 1911, arts. 1985–1991, requiring only a statement of conclusions on issuable facts, and not a statement of the evidence from which conclusions are reached.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Wade B. Leonard against R. J. Torrance and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Geo. K. Holland, of Dallas, for appellant.

Flippen, Gresham & Freeman, of Dallas, for appellees.

BOYCE, J. Wade B. Leonard, appellant, brought this suit against appellees, R. J. Torrance and J. P. Kittrell, alleging that the plaintiff was a broker, engaged in the sale of corporate stocks, bonds, and physical properties of corporations, etc., and that on or about August 1, 1916, defendants listed with him for sale their stock in the Oak Lawn Ice & Fuel Company, a corporation, the capital stock of which was $50,000, all of which was owned by said defendants, and the plaintiff was authorized to sell their said stock and the physical property of the said corporation at a price of $45,000; that the plaintiff was given the exclusive agency for the sale of said property, and in case of sale he was to receive the sum of 5 per cent. commission, on any and all sales made to any one except one W. M. Brown; that plaintiff conducted negotiations with numerous persons and offered the property for sale to D. Mack Jones, C. E. Kennemer, and others, but was unable to make sale; that defendants reduced the price of said property to $35,000 and procured an offer of $25,000 therefor, which offer defendants declined, but requested plaintiff to continue his efforts to sell said property and submit to them offer of the highest price obtainable; that about the 3d day of October, 1916, plaintiff procured said D. Mack Jones, C. E. Kennemer, and others associated with them, as purchasers for said property at the price of $30,000; that about September 20, 1916, defendant Kittrell bought out the interest of the defendant Torrance in said property for the sum of $15,000, and that about October 7, 1916, said defendant Torrance sold said property to the persons theretofore procured as purchasers by plaintiff, selling the same at a price of $27,500; that such acts on the part of defendants were done for the purpose of defrauding plaintiff of his commission on the sale of said property; that by reason thereof he was entitled to 5 per cent. commission on the sale from Kittrell to Torrance, and 5 per cent. on the sale from Torrance to the said D. Mack Jones, C. E. Kinneman, and their associates. The defendants denied that plaintiff was given the exclusive agency for the sale of said property, and alleged that plaintiff never did anything toward the sale of said property, except to secure an offer from D. Mack Jones to purchase the same for the sum of $25,000; that thereafter the said R. J. Torrance purchased the interest of the said Kittrell in said property, and about September 26th, the said Torrance in good faith canceled the agency of the plaintiff, and thereafter through his own efforts procured the sale of said property to C. E. Kinnemer and J. B. Adoue, Jr.; that the said R. J.

Torrance was the sole and only procuring cause of said sale to said persons, and that the plaintiff had nothing whatever to do therewith.

Trial was had before the court, and judgment rendered for the defendants. No statement of facts is brought up, and as the assignments complain of the failure of the court to comply with the law in making his conclusions of fact, we here set out, in substance, the conclusions of fact as found by the court:

(1) In this paragraph of the conclusions it was found that the plaintiff was engaged in the business of broker, as alleged.

(2) In this paragraph it was found that defendants were engaged in the business of manufacturing ice, and owned and operated said business known as the Oak Lawn Ice & Fuel Company, as alleged.

(3) In this paragraph it was found that about August 1, 1916, defendant Torrance, acting for himself and Kittrell listed said property with the plaintiff for sale at the price of $45,000, agreeing to pay him a commission of 5 per cent. thereon for procuring a purchaser at said price: This finding contained this further statement as to the understanding of the parties:

"That if he (plaintiff) had a good bid, to submit it, no limitation as to time—good until the sale was consummated, or until it was no longer for sale, with the distinct understanding, however, that it was not an exclusive agency, but that Mr. Torrance and Mr. Kittrell were also to try to effect a sale of these properties."

(4) Under this paragraph it was found that plaintiff, Leonard, advertised said property for sale, but was unable to submit but one definite proposal, which was from D. M. Jones, for $25,000, which was refused. "That after its refusal R. J. Torrance purchased the interest of Mr. Kittrell, and withdrew the sale of said plant and physical properties from Mr. Leonard the latter part of September, Mr. Leonard having done nothing in the premises except to have written Mr. D. Mack Jones to raise his offer, and requesting Messers. Torrance and Kittrell to lower their offer after Torrance and Kittrell had refused the bid he (Leonard) had submitted to them from Mr. Jones, and that said withdrawal was not done in bad faith."

(5) The fifth paragraph of the finding is as follows:

"(5) That thereafter R. J. Torrance, through his own efforts, procured a purchaser in one C. E. Kennemer, who in turn interested J. B. Adoue, Jr., in the purchase; that neither Kennemer or Adoue knew Leonard in the deal, as he had never written to either of them, had any conversation with either of them, or in any way submitted to either of them the Oak Lawn Ice & Fuel Company plant for purchase, but that same was submitted to C. E. Kennemer by Mr. Torrance direct."

(6) Under the sixth paragraph it was found that plaintiff "was in no manner the procuring cause or an efficient means of the sale and purchase, but that R. J. Torrance was."

These findings of fact were followed by conclusions of law, separately stated, to which it is not necessary to further refer.

[1, 2] It is first complained that the said findings of fact include therein conclusions of law. It is suggested in the statement under this assignment that the conclusions that the cancellation of plaintiff's agency was not done in bad faith, that R. J. Torrance was the procuring cause of the sale, and that the plaintiff was in no manner the procuring cause are conclusions of law. We think that these statements are conclusions of fact. If the case had been submitted to the jury issues such as these would have been submitted for its finding. Even if the conclusions of fact and law were to some extent intermingled, this fact alone would not necessitate a reversal of the case. Heirs of Ryon v. Rust, 65 Tex. 532; Wells v. Yarborough, 84 Tex. 660, 19 S. W. 867; Mortgage Co. v. McCarty, 34 S. W. 306; Transit Co. v. Alexander, 90 S. W. 1119; Robt. McLane Co. v. Swernemann, 189 S. W. 282.

[3] It is also assigned that the court "erred in making and filing only broad general findings of fact," and in not finding specific facts as requested in a written motion for specific findings, filed before the conclusions of fact and law were prepared and filed by the court. The language of article 1989, which provides that the trial judge shall, at the request of either of the parties, "state in writing the conclusions of fact found by him, separately from the conclusions of law," and its setting in the statute (articles 1985 to 1991) shows, we think, that it was the purpose of the law to require only a statement of the conclusions on issuable facts, and not a statement of the evidence from which such conclusions are reached. Where the trial is before the court the conclusions of fact are regarded in the same manner as the special verdict of the jury, where the trial is before the jury. Articles 1990 and 1991, R. S. It is expressly provided by article 1985 that the special verdict "must find the facts established by the evidence, and not the evidence by which they are established." So it has been held in numerous cases that the trial court is not required to state the evidence upon which conclusions of fact are based. Gordon v. McCall, 20 Tex. Civ. App. 283, 48 S. W. 1113; Thompson v. Mills, 45 Tex. Civ. App. 642, 101 S. W. 561; Maury v. McDonald, 55 Tex. Civ. App. 50, 118 S. W. 817; Ragley-McWilliams Lumber Co. v. Hare, 61 Tex. Civ. App. 509, 130 S. W. 864; Barnes v. Riley, 145 S. W. 292. The Supreme Court, in the case of Callaghan v. Grenet, 66 Tex. 240, 18 S. W. 508, makes this statement on this subject:

"What the statute requires is a succinct and clear statement of what the judge thinks is the true result of the evidence—what it proves pertinent to the issue between the parties."

In this case we think the court, in his findings, announced a conclusion as to every issue of fact made by the pleadings and the request for findings, in so far as it related to matters as to which the appellant had the right to request a finding, was sufficiently complied with. We are of the opinion, therefore, that the judgment should be affirmed.