**MAY et al. v. SOUTHWESTERN LUMBER CO. OF NEW JERSEY. (No. 1298.)**

(Court of Civil Appeals of Texas. Beaumont. Dec. 10, 1925. Rehearing Denied Jan. 6, 1926.)

**1. Appeal and error ⊚═863—Appeal from judgment held not to involve timber on north half of survey.**

Where, in suit for all the timber on a 160-acre survey, plaintiff secured judgment for all the timber on north half of survey, and judgment was rendered for defendants for all the timber on the south half, and plaintiff alone appealed, *held*, that title to timber on north half of survey was not involved on the appeal.

**2. Contracts ⊚═206—Legal effect of answers of Supreme Court to certified questions from Court of Civil Appeals was to uphold title of plaintiff to timber.**

Under contract providing that, in event Supreme Court in pending litigation held that a deed passed an absolute fee simple to timber claimed by plaintiff, defendants would pay plaintiff agreed manufactured value of such timber cut by them, legal effect of answers of Supreme Court to questions certified from Court of Civil Appeals that an absolute fee-simple title to timber passed to grantee through whom plaintiff claimed, was to uphold title of plaintiff to timber within contemplation of parties to contract.

**3. Contracts ⊚═169 — Contract construed in light of facts known and contentions made when contract was executed.**

Contract, providing that, if Supreme Court, in pending litigation, held that a deed passed an absolute fee-simple title to timber claimed by plaintiff, defendants would pay plaintiff agreed manufactured value of such timber cut by them, was to be construed in light of facts then known to parties and contentions that they were then making.

**4. Contracts ⊚═206—Contract for payment of timber cut by defendants while litigation was pending in Supreme Court construed.**

Contract for settlement of dispute as to timber cut by defendants, title to which was claimed by plaintiff, when construed in light of facts known to parties, and contentions they were then making, *held* to manifest an intention that defendants were to pay to plaintiff agreed value of piling which had been manufactured by defendants from such timber, if Supreme Court in

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

litigation then pending should hold that deed through which plaintiff claimed title passed a fee-simple title to such timber to grantees mentioned therein.

**5. Contracts ⬅175(1) — Burden of pleading and proving that piling not manufactured from timber growing when deed was executed rested on defendants.**

Under contract binding defendants to pay plaintiff manufactured value of piling, manufactured from plaintiff's timber, if Supreme Court held that a deed passed a fee-simple title to such timber to grantee through whom plaintiff claimed title, burden of pleading and proving that piling was not manufactured from timber that was standing and growing when deed was executed rested on defendants.

**6. Evidence ⬅5(2)—Court did not know judicially that timber out of which piling was manufactured was not in existence when deed was executed.**

In suit on contract binding defendants to pay plaintiff value of piling manufactured from plaintiff's timber, if Supreme Court held that a deed passed a fee-simple title to such timber to grantee through whom plaintiff claimed title, court did not know judicially that timber out of which piling was maufactured was not in existence when deed was executed.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by the Southwestern Lumber Company of New Jersey against C. H. May and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Smith & Lanier, of Jasper, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, Terry, Cavin & Mills, of Galveston, and G. E. Richardson, of Jasper, for appellee.

HIGHTOWER, C. J. This is an appeal from a judgment of the district court of Jasper county against appellants and in favor of appellee for the sum of $1,961.70, with interest at the legal rate from the date of the judgment.

Appellee's suit was based upon the following contract, which takes the form of a bond:

"State of Texas, County of Jasper.

"Whereas, C. H. May did on or about the 10th day of July, 1920, cut and remove pine timber from the W. A. Isaacs survey in Jasper county in the amount of two hundred and ninety-three (293) pieces of piling containing in the aggregate fifteen thousand and ninety (15,090) lineal feet, and has said timber now on the yard at Gallan, Tex., which said timber is intermingled with timber cut by the said C. H. May and J. T. Rawls from other surveys; and

"Whereas, there is a suit pending in the Supreme Court of the state of Texas wherein J. R. Chapman is plaintiff and Jim Dearman and Lettie Dearman are defendants, involving the title to the timber situated on the W. A. Isaacs survey; and

"Whereas, there has been a suit filed in the district court of Jasper county, numbered 2086, styled Southwestern Lumber Company of New Jersey v. C. H. May et al., involving the title to said timber, in which suit plaintiff, Southwestern Lumber Company of New Jersey, alleges that defendants therein C. H. May et al. have cut from said W. A. Isaacs survey two hundred and ninety-three (293) pieces of piling containing fifteen thousand and ninety (15,090) lineal feet of the manufactured value of one thousand nine hundred and sixty one dollars and seventy cents ($1,961.70); and

"Whereas, Hon. J. T. Adams, judge of said court, has issued a writ of injunction prohibiting the said C. H. May, his agents, attorneys, or employés from further handling said piling so cut and removed from said survey, as aforesaid; and

"Whereas, the said C. H. May had, before the issuance of service upon him of the said writ of injunction, sold to the said J. T. Rawls for a valuable consideration to him paid by said Rawls, the said two hundred and ninety-three (293) pieces of piling; and

"Whereas, the said timber is now on the yards as aforesaid, subject to decay and depreciation in value on account of being exposed to the weather, and on account thereof would greatly deteriorate in value before the final termination of the suit between J. R. Chapman and Jim Dearman and Lettie Dearman, now pending in the Supreme Court of the state of Texas as above mentioned; and

"Whereas, the said J. T. Rawls is desirous of disposing of said piling taken from said Isaacs survey, together with the timber with which it is so intermingled as aforesaid; and

"Whereas, the said Southwestern Lumber Company of New Jersey, by and through its agents and attorneys of record, has agreed to accept a bond in the sum of one thousand nine hundred and sixty-one dollars and seventy cents ($1,961.70), which is recognized and admitted to be the true value of said piling in its present state, payable to said Southwestern Lumber Company of New Jersey, conditioned that, if the title of the said J. R. Chapman to the pine timber located on the said W. A. Isaacs survey, regarding which said suit is now pending in the Supreme Court of the state of Texas, as aforesaid, shall be upheld by said Supreme Court, the said C. H. May, as principal, and the other subscribers hereto, as sureties, shall pay to the said Southwestern Lumber Company of New Jersey the said sum of one thousand nine hundred and sixty-one dollars and seventy cents ($1,961.70):

"Now, therefore, know all men by these presents, that we, C. H. May, as principal, and J. M. Orton and J. R. Ratcliff, as sureties, are held and firmly bound unto the Southwestern Lumber Company of New Jersey, in the sum of one thousand nine hundred and sixty-one dollars and seventy cents ($1,961.70), lawful money of the United States, for the payment of which to the said Southwestern Lumber Company of New Jersey, its successors and assigns, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"The condition of the above obligation is such that, if the title of the said J. R. Chapman to the pine timber on the said W. A. Isaacs survey

---

of land, Jasper county, Tex., shall be upheld by the Supreme Court of the state of Texas in the action therein pending between said J. R. Chapman and said Jim Dearman and Lettie Dearman, then this obligation shall remain in full force and effect, and shall thereupon become a liquidated demand in said sum of one thousand nine hundred and sixty-one dollars and seventy cents ($1,961.70), but, if the title to said pine timber shall be determined by said Supreme Court to be in said Jim and Lettie Dearman, then this obligation shall be null and void.

"In testimony whereof witness our hands this the 19th day of Aug. 1920.

"[Signed]     C. H. May.
"J. R. Ratcliff.
"J. M. Orton.

"L. E. Lanier,
"Ura Swann,
        "Witnesses."

Appellee, as plaintiff, prayed for judgment upon the foregoing contract as against the principal maker thereof, C. H. May, and his sureties, Ratcliff and Orton, for the full amount specified in the contract. All the appellants answered by general demurrer and general denial and other special pleas which have become immaterial and are not before this court, and May's sureties, Ratcliff and Orton, prayed that, in the event judgment should be rendered against them in favor of appellee, they have judgment over against their principal, May, for whatever amount the appellee might recover against them. The cause was tried with a jury, but upon conclusion of the evidence the trial court peremptorily instructed a verdict in favor of the appellee as against all defendants for $1,961.70, with interest on that amount from the date of the judgment at the legal rate, and also instructed a verdict in favor of Ratcliff and Orton against May for the same amount.

This controversy, it might be said, grows out of the following facts:

On the 17th day of December, 1898, one James Dearman and wife, Lettie Dearman, who at that time owned the W. A. Isaacs 160-acre survey in Jasper county, conveyed to the executors of the estate of one M. T. Jones, deceased, "all the pine timber now standing and growing upon the W. A. Isaacs 160-acre survey." The deed was in form a general warranty. Thereafter the title to the timber that was passed to the executors of Jones was passed by mesne conveyances to J. R. Chapman. On the 18th day of March, 1913, J. R. Chapman filed a suit in the district court of Jasper county against James Dearman and his wife, Lettie Dearman, and also against Isaac Dearman for all the pine timber on the W. A. Isaacs 160-acre survey. In the first part of Chapman's petition in that suit be alleged generally ownership in himself of all the pine timber on said survey, but in paragraph 2 of his petition he pleaded his title to the pine timber specially through the deed of December 17, 1898, executed by James Dearman and wife to the executors of the estate of M. T. Jones. In that suit Chapman also prayed for a writ of injunction to restrain and enjoin the Dearmans from cutting and removing the pine timber on the Isaacs survey then involved in that suit, and a temporary writ of injunction was granted as prayed by Chapman. On December 10, 1914, that suit (Chapman v. Dearman) was tried, and the trial court, as we construe the judgment in that case, rendered judgment in favor of Chapman for all the pine timber on the north half of the W. A. Isaacs survey of 160 acres, but rendered judgment in favor of James Dearman and wife for all the pine timber on the south half of that survey. See Chapman v. Dearman (Tex. Civ. App.) 181 S. W. 808. The trial court, in that suit, dissolved the temporary injunction theretofore granted in favor of Chapman against the Dearmans as to the pine timber on the south half of the survey, but perpetuated the temporary injunction theretofore granted in favor of Chapman against the Dearmans on the north half of the survey. The land itself, as distinguished from the timber, was not in controversy in that suit. From the judgment in that suit, in so far as the same was against him, Chapman appealed to the Court of Civil Appeals at Galveston, and the appeal was afterwards transferred to this court.

The real and only contention between the parties to the Chapman-Dearman suit was as to the proper construction of the deed of December 17, 1898, from James Dearman and wife to the executors of the estate of M. T. Jones. It was Chapman's contention in that suit that the deed, by its terms, conveyed an absolute fee-simple title to the executors of the Jones estate as to all the pine timber on the W. A. Isaacs 160-acre survey, while, on the contrary, the Dearmans were contending in that suit that said deed conveyed to said executors only a right or license to remove the pine timber on said survey within a reasonable time, and that the timber was not removed within a reasonable time, and, therefore, had reverted to the grantors, Dearman and wife. That was the issue before the trial judge in that suit, and the trial judge took the view of the Dearmans, and held that the executors of the M. T. Jones estate had, under the terms of said deed, only the right to remove the pine timber from the W. A. Isaacs survey within a reasonable time. The trial court then found as a fact, and held that as to the south half of the survey, more than a reasonable time had elapsed in which to remove the pine timber, and as to the south half the temporary injunction in that suit, as we have stated, was dissolved because the title to the pine timber on the south half had, in the opinion of the trial court, reverted to Dearman and wife, but as to the north half the court found as a fact that a reasonable time had not elapsed in

which to remove the pine timber, and, therefore, perpetuated the temporary injunction in favor of Chapman and against the Dearmans as to the pine timber on the north half of the survey. From that judgment Chapman appealed, but the Dearmans did not appeal. When this cause was submitted in this court a majority of this court held that the deed from Dearman and wife to the executors of Jones conveyed to the grantee an absolute fee-simple title to all the pine timber on the W. A. Isaacs 160-acre survey, and reversed the trial court's judgment in so far as that court held that the Dearman's were the owners of the pine timber on the south half of said survey and rendered judgment in favor of Chapman for such timber, and perpetuated the injunction which the trial court had theretofore granted, but afterwards dissolved, as to the pine timber on the south half of said survey. In view of the fact that Associate Justice Middlebrook of this court dissented from the majority opinion, and held that the trial judge had correctly construed the deed from the Dearmans to the executors of the Jones estate, this court certified to the Supreme Court of this state two questions of law. See Chapman v. Dearman, supra. The Supreme Court answered the certified question, and held that the deed of December 17, 1898, from Dearman and wife to the executors of Jones conveyed to the grantees an absolute fee-simple title to the pine timber on the W. A. Isaacs survey of 160 acres. When the answers of the Supreme Court to the certified questions reached this court, it was then finally ordered by this court that the judgment of the trial court be reversed and rendered, as had originally been done by the majority opinion. Afterwards, upon motion of the Dearmans, this court amended its judgment, so that Chapman was thereby permitted to recover only such pine timber as was standing and growing upon the W. A. Isaacs survey at the date of the deed from the Dearmans to the executors of Jones.

While the case of Chapman v. Dearman was pending in the Supreme Court on the certified questions, and about July 10, 1920, the appellant in this case, May, cut from the W. A. Isaacs 160-acre survey the pine timber which was manufactured into piling as mentioned in the contract upon which this suit is based, and upon learning of this the appellee herein, who had acquired Chapman's title to this timber, applied to the district judge of Jasper county for an injunction to restrain and enjoin May from disposing of the piling mentioned in the contract. At that time the case of Chapman v. Dearman on certified questions was still pending in the Supreme Court, and it was in this situation of the parties that the contract here sued on was executed. Now, as we understand, counsel for appellants in this case

make, in substance, the following contentions for reversal of this judgment:

[1-3] First, that the title to all of the pine timber on the W. A. Isaacs 160-acre survey was involved on appeal in the case of Chapman v. Dearman, both in the Court of Civil Appeals and in the Supreme Court, and that, since the Supreme Court in that case only dealt with the pine timber on the south half of said survey, there could be no recovery by the appellee in this case on the contract sued on by it, because, as counsel contend, the makers of the contract obligated themselves to pay to appellee the amount specified in the contract only in the event and upon the condition that the Supreme Court should uphold the title of Chapman to all of the pine timber on the entire W. A. Isaacs survey. We hold, in answer to this contention, that the pine timber on the north half of the W. A. Isaacs survey was not involved in the appeal of the case of Chapman v. Dearman, supra, either in this court or in the Supreme Court. As we have already stated, the judgment of the trial court in that case, in so far as it awarded to Chapman recovery for the pine timber on the north half of the survey, and in so far as the trial court perpetuated the temporary injunction as to the timber on the north half of said survey, was not appealed from at all by the Dearmans, and, therefore, the pine timber on the north half was not involved in either of the appellate courts. It is true that a construction of the deed of December 17, 1898, from the Dearmans to the executors of Jones was involved, but it does not follow from that fact that the pine timber on the north half of the Isaacs survey was involved in the appeal of that litigation. And we hold that the legal effect of the answers of the Supreme Court in Chapman v. Dearman to the certified questions from this court was to uphold the title of Chapman to the pine timber that was involved in the litigation then before that court, within the contemplation of the parties to the contract herein sued on at the time of its execution.

It is clear from the history behind the present litigation that the parties to this contract meant that, in the event the Supreme Court, in answer to the certified questions from this court, should hold that the deed of December 17, 1898, from the Dearmans to the executors of Jones passed to the grantee an absolute fee-simple title to the pine timber mentioned in the deed, the appellants here would pay to appellee the amount of money specified in the contract here sued on, as was held by the trial court, that amount being the agreed manufactured value of the timber that the appellant May had cut, while the case of Chapman v. Dearman was pending in the Supreme Court and before he was enjoined. We think that there is no reasonable escape from this conclusion. If there be any ambiguity or uncertainty about the

intentions of the parties to this contract, as gathered from the language they employed, which we doubt, still the contract must be construed in the light of all the facts and circumstances surrounding the parties and actuating them at the time they executed this contract. It is clear that the parties to this contract knew, at the time of its execution, that the case of Chapman v. Dearman, supra, was pending in the Supreme Court on certified questions from this court, and they knew that it was Chapman's contention in that litigation that the deed from the Dearmans to the executors of Jones had passed to the grantees the absolute fee-simple title to the pine timber on the W. A. Isaacs survey, and they also knew that it was the contention of the Dearmans in that litigation that said deed granted only the right to the grantees to remove the pine timber within a reasonable time from the date of that deed, failing in which, as found by the trial court as to the south half of the survey, the pine timber thereon had reverted to the Dearmans. They knew and intended that, in the event the Supreme Court should hold that the deed from the Dearmans to the executors of Jones had the effect to pass an absolute fee-simple title to the timber on the Isaacs survey, they would be bound and obligated to pay to the appellee the amount of money representing the manufactured value of the pine timber that appellant May had cut from that survey. They could not, in reason, have intended anything else. We therefore hold that the contract here sued on by appellee, having been executed by appellants while the Chapman-Dearman litigation was pending in the Supreme Court, with only the pine timber on the south half of the W. A. Isaacs survey involved, should be, and must be, construed in the light of the facts then known to the parties and the contentions that they were then making. It was said by the Commission of Appeals of this state in Barber v. Herring, 229 S. W. 472:

"It is elementary law that the situation of the parties, the object sought to be attained as a common purpose, and the surrounding circumstances can and should be looked to in the interpretation of the contract."

Again it was said, in First National Bank v. Shaw (Tex. Civ. App.) 260 S. W. 309:

"And in arriving at the intention of the parties, and in the interpretation of the agreement, it is proper to take into consideration the subject-matter of the contract, the situation of the parties, and the purpose they had in view in making the agreement; and the language used by them should be reviewed and interpreted in the light of such conditions."

[4] Applying the rule of interpretation as just quoted, we hold that it was the intention of the parties to this contract that appellants should pay to appellee the value of the piling which had been manufactured by appellant May from pine timber on the W. A. Isaacs survey mentioned in this contract, as that value was agreed in the contract, in the event the Supreme Court of this state should hold that the deed from the Dearmans to the executors of Jones had the effect to pass the fee-simple title to the pine timber on the W. A. Isaacs survey to the grantees mentioned in that deed. The Supreme Court did so hold (Chapman v. Dearman, 111 Tex. 132, 229 S. W. 1112), and in consequence of that holding the liability of appellants to appellee on the contract here involved for the full amount of money therein specified became absolute, and the trial judge was correct in peremptorily instructing the verdict as he did.

[5, 6] But appellants make another contention, which is, in substance, that, since the deed from Dearman and wife to the executors of Jones had the legal effect to convey only such pine timber as was standing and growing upon the W. A. Isaacs survey at the time of its execution, before appellee was entitled to recover upon the contract here sued on it was incumbent upon appellee to prove that the piling mentioned in this contract was manufactured from timber that was standing and growing upon the W. A. Isaacs survey at the time of the execution of said deed. We cannot agree with this contention. Reading the written contract here sued on as a whole, in the light of the facts and circumstances obtaining at the time of its execution, and the contentions of the parties, we cannot escape the conclusion that this contract bound appellants to pay to appellee the amount of money specified in this contract representing the manufactured value of the piling, in the event the Supreme Court should hold that the deed from the Dearmans to the executors of Jones passed a fee-simple title to the pine timber on the W. A. Isaacs survey, as that question was propounded to that court by this court. If, however, any other construction of the contract was open to appellants, we think that the burden of pleading and proving that this piling was not manufactured from pine timber that was standing and growing upon the W. A. Isaacs survey at the date of the deed from the Dearmans to the executors of Jones rested upon appellants and not upon appellee. We cannot, of course, accept the contention of counsel for appellants that this court knows judicially that the timber out of which this piling was manufactured was not in existence at the time of the execution of the deed from the Dearmans to the executors of Jones.

It results from the foregoing conclusions that the trial court's judgment must be affirmed, and it has been so ordered.